UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

DAMON VINCENT,

        Plaintiff,

   - against -

SITNEWSKI, C.O.; FREDERICK, J.
KOVACS, C.O.; CARTER, C.O.;
STETSON, C.O.; DEPO, C.O.;
SCHMIDT, LT. of GREENHAVEN, in
his individual and official capacities,

        Defendants.

-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILEI·
DOC #: _____
DATE FILED: _____

**OPINION AND ORDER**

**10-cv-3340 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      This is a section 1983 action for five constitutional violations

allegedly suffered by Damon Vincent while he was incarcerated Green Haven

Correctional Facility ("Green Haven").[1]  The first four claims are for retaliation

under the First Amendment.  The fifth claim is for failure to protect under the

Eighth Amendment.  On February 11, 2013, Defendants moved for judgment on

---

    [1]    Vincent also raised a sixth claim — under state law — which was
dismissed on September 20, 2011.  *See Vincent v. Sitnewski*, No. 10 Civ. 3340,
2011 WL 4552386 (S.D.N.Y. Sept. 10, 2011).

the pleadings, which the Court denied on September 20, 2013, holding that

Vincent's claims were too fact-bound to be resolved as a matter of law.[2]  Since

then, the record has ripened.  Defendants now move for summary judgment on all

five claims.  For the reasons set forth below, defendants' motion is GRANTED in

part and DENIED in part.[3]

───────────────

[2]      *See Vincent v. Sitnewski*, No. 10 Civ. 3340, 2013 WL 5299027
(S.D.N.Y. Sept. 20, 2013).

[3]      This case was originally assigned to another judge of this District,
who — in an abundance of caution — appears to have construed Vincent's
allegations of retaliatory conduct as giving rise *both* to traditional First
Amendment claims *and* to freestanding Eighth Amendment claims.  *See id.* at *1
("[Vincent's] complaint alleges that defendants took adverse action against
Sitnewski in retaliation for certain grievances and lawsuits which Vincent filed,
and also alleges violations of Eighth Amendment rights.").  Read holistically,
however, the claims arising from the adverse actions that Greenhaven officers
allegedly took against Vincent are uniformly retaliation claims.  *Cf. Johnson v.
City of Shelby*, 135 S.Ct. 346 (2014) (per curiam) (explaining that allegations
should be construed for substance, not form).  This is how defendants, in their
papers, have parsed Vincent's claims.  And it is even how Vincent *himself*
describes those claims, in the preliminary statement of his opposition papers.  After
tallying a list of ostensibly independent constitutional causes of action, Vincent
explains that "*all* [of the foregoing]" was "in retaliation for [my] filing of lawsuits
and grievances."  Memorandum of Law in Opposition to Defendants' Motion for
Summary Judgment ("Opp. Mem."), at 1 (emphasis added).  *See also id.*
(describing the same incidents as "the unlawful acts against [me] of retaliation").  I
hold, therefore, that Vincent brings only retaliation claims, not freestanding claims
under constitutional provisions *other than* the First Amendment.  The analysis
proceeds accordingly.

## II.    BACKGROUND[4]

Vincent asserts constitutional violations in connection with five incidents, all of which allegedly occurred during the Spring and Summer of 2009. Incidents one, three, four, and five are based on retaliation.  Incident two is based on the failure to protect.  For clarity's sake, they will be presented in chronological order.

### A.    Claim One

Vincent alleges that on March 11, 2009, Corrections Officer ("CO") Sitnewski sexually assaulted him because of his pending lawsuits.  Specifically, Vincent alleges that Sitnewski conducted a pat and frisk search, groping Vincent's genital area, and remarking: "Isn't one of your lawsuits about this, can't nobody see if I fuck you in the ass."[5]  On March 16, 2009, Vincent filed an internal complaint outlining this allegation.

### B.    Claim Two

Vincent alleges that on May 8, 2009, a fight occurred in the prison courtyard, at which time Vincent, a non-participant, was assailed from behind by

---

[4]     Unless otherwise noted, the facts set forth in this section are incorporated from the Rule 12(c) decision.  *See Vincent*, 2013 WL 5299027, at *1-2.

[5]     Complaint and Jury Trial Demand ("Complaint") at 7.

an unidentified inmate in the prison yard. Vincent alleges that defendants watched the fight proceed for nearly five minutes before intervening, and that in the interim, Vincent suffered severe facial lacerations.  Accordingly, Vincent argues that C.O. Kovacs — who was stationed in the courtyard observation tower — and C.O. Frederick and C.O. Relf — who were among the officers called to break up the fight — did not take sufficient steps to protect him from injury, thereby violating his Eighth Amendment rights.  On May 20, 2009, Vincent filed an internal grievance outlining this allegation.

Prison records make clear that C.O. Kovacs, upon witnessing the fight, called for a response team, and that C.O. Frederick and C.O. Relf (among other officers) responded in a timely manner.[6]  Vincent offers no evidence to rebut the version of events memorialized in the records.  Instead, he relies on his own view that the officers did not proceed as quickly as they could have.[7]

## C.    Claim Three

---

[6]    *See* Defendants' 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶¶ 26-33.

[7]    *See* Opp. Mem. at 13-14.  Vincent also maintains that no one came to assist him the yard, but this assertion is belied by the undisputed facts (1) that the fight was eventually broken up, and (2) that C.O. Frederick escorted Vincent out of the courtyard.  *See* Def. 56.1 ¶¶ 29-32.

Vincent alleges that on May 28, 2009, he was retaliated against for filing grievances in connection with Claims One and Two.  Specifically, Vincent alleges that at approximately 2 PM, C.O. Carter, with the cooperation of C.O. Stetson, handcuffed Vincent to his bedpost, telling him "[t]hat will keep you from complaining, you will learn asshole."[8]

Vincent was allegedly left in this position for almost eighteen hours, unable to move around his cell and deprived of access to the toilet.  Vincent further alleges that another officer — whose name he did not know — witnessed him handcuffed to the bed and did nothing.  Neither officer on duty in Vincent's housing block the evening and night of May 28 — C.O. Lalonde and C.O. Coccitti — testified to seeing him (or any other inmate) handcuffed in the manner described by Vincent.[9]

### D.   Claim Four

Vincent alleges that on June 8, 2009, C.O. Depo and Lt. Schmidt intruded on him while showering, and left him in the shower room nude, removing both his clothes and the shower curtain.  Lt. Schmidt explained that the point was to see what "kind of man" Vincent was "without his pen" — allegedly a reference

---

[8]     Complaint at 15.

[9]     Def. 56.1 ¶¶ 16-17.

to Vincent's complaints in connection with Claims One and Two.  Vincent was allegedly left in the shower for approximately an hour, during which time various other officers — including at least one female officer — passed by and viewed his naked body.  On June 10, 2009, Vincent filed an internal grievance outlining this allegation.

### E.   Claim Five

Finally, Vincent alleges that on June 25, 2009, C.O. Relf entered his cell and verbally harassed him.  Relf allegedly admonished Vincent not to file any more grievances, and warned him that if Relf caught Vincent doing "any of that Muslim stuff around here," he was going to return to Vincent's cell and "jump" him.[10]  On July 1, 2009, Vincent filed an internal grievance outlining this allegation.

### F.   Defendants' Response

Defendants have moved for summary judgment on the grounds that all of Vincent's allegations either (1) are factually baseless or (2) fail to satisfy the elements of the relevant constitutional claim.  Alternatively, defendants argue that

---

[10]   Complaint at 21.

they are entitled to qualified immunity in connection with every incident alleged by Vincent.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[11] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[13] "'Credibility determinations, the weighing of the evidence,

---

[11]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[12]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[13]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[14]

## IV.   APPLICABLE LAW[15]

### A.   Retaliation

"'To prevail on a First Amendment retaliation claim brought under 42 U.S.C. § 1983, a prisoner must demonstrate (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"[16] "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care."[17] "Only retaliatory conduct that would deter a

---

[14]   *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[15]   To prevail on a claim under section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Here, this element in indisputably satisfied — the Government has not contested that the officers in question were acting under the color of state law when they allegedly violated Vincent's rights.

[16]   *Ford v. Palmer*, 539 Fed. App'x 5, 6 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

[17]   *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).

similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."[18]

In other words, the fact that adverse action was taken against an inmate is not enough to sustain a retaliation claim.  Rather, the inmate must demonstrate that the adverse action was of a sufficiently serious nature to deter a reasonable inmate from exercising his or her constitutional rights.[19]  This question, like "the question of causation, [] is factual in nature."[20]  In determining whether an individual of ordinary firmness would be deterred from exercising his or her constitutional rights, "the court's inquiry must be 'tailored to the different circumstances in which retaliation claims arise,' bearing in mind that '[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse.'"[21]

---

[18]     *Id.* at 493 (citations omitted).

[19]     *See id.*

[20]     *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999).  *Accord Ford v. Palmer*, 539 Fed. App'x 5, 7 (2d Cir. 2013) (summary order) (treating the "adverse action" question as a factual issue, and explaining that "The district court erred in reasoning, as a matter of law, that verbal threats must be more definite and specific than [defendant's] alleged threat in order to constitute 'adverse action'").

[21]     *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes*, 239 F.3d at 493).

Furthermore, the fact that an inmate has filed a lawsuit should not be taken to imply that the retaliatory conduct was not sufficient to deter a person of ordinary firmness from exercising his or her rights. As the Second Circuit has explained, "that a particular plaintiff . . . responded to retaliation with greater than 'ordinary firmness' does not deprive him of a cause of action."[22] And this is especially so in cases — like this one — where the plaintiff "is no stranger either to the grievance system or to the federal courts."[23]

## B.    Failure to Protect

To establish an Eighth Amendment violation based on an official's failure to protect, an inmate must satisfy a two-pronged test. *First*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm."[24] *Second*, an inmate must show that prison officials acted with "deliberate indifference" to the inmate's "health or safety."[25] A prison official can only be said to act with deliberate indifference insofar as he or she "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by

---

[22]    *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

[23]    *Id.*

[24]    *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[25]    *Id.*

failing to take reasonable measures to abate the harm."[26]  To satisfy this standard in the context of an altercation, an inmate must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene."[27]

## C.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[28]  A court must consider "both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that his

---

[26]     *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996).

[27]     *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).  *Accord Stubbs v. Dudley*, 849 F.2d 83, 86-87 (2d Cir. 1988) (explaining that an official's decision not to intervene only qualifies as deliberately indifferent if the official had a fair opportunity to protect the inmate with no risk to himself).

[28]     *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

actions were unlawful."[29]  Qualified immunity is not properly granted where the facts alleged show that the official's conduct violated a constitutional right and the right was clearly established.[30]  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'"[31]

## V.     DISCUSSION

### A.     Failure to Protect

Vincent's failure to protect claim fails as a matter of law.  Beyond mere speculation, Vincent has not offered a single piece of evidence to support his contention that C.O. Kovacs was dilatory in calling a response team to the prison yard.  Nor has he offered evidence that C.O. Frederick or C.O. Wolf, once they arrived in the yard, failed to discharge their responsibilities.  What is more, Vincent has also failed to show that C.O. Kovacs, C.O. Frederick, or C.O. Wolf had actual or constructive knowledge that Vincent, in particular, faced harm in the prison

---

[29]     *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003) (per curiam) (internal quotation marks omitted).

[30]     *See Erlich v. Town of Glastonbury*, 348 F.3d 48, 55 (2d Cir. 2003).

[31]     *Pugh v. Goord*, 571 F. Supp. 2d 477, 510 (S.D.N.Y. 2008) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).

yard.[32]  No reasonable finder of fact could hold C.O. Kovacs, C.O. Frederick, or

C.O. Wolf liable for failure to protect.

### B.    Retaliation Claims

Vincent's retaliation claims are another story.  All four claims —

Claims One, Three, Four, and Five — raise issues of fact sufficient to render

summary judgment inappropriate.[33]

### 1.    Claim One

Defendants do not deny the core allegation of Vincent's first claim —

that C.O. Sitnewski groped Vincent's genitals while making a threatening

reference to his past complaints.  Instead, they focus on the legal sufficiency of

Vincent's retaliation claim.  *First*, defendants argue that genital groping, as

---

[32]     *See Jean-Laurent*, 540 F. Supp. 2d at 512 (explaining that a failure to
protect claim only gives rise to liability if "a reasonable person in the officer's
position would know that the victim's constitutional rights were being violated").
*See also Ricciuti v.  NYC Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (an
"officer has an affirmative duty to intercede on the behalf of a citizen whose
constitutional rights are being violated," but only if the violation is "one of which a
reasonable person would have known").

[33]     With respect to all four of Vincent's retaliation claims, defendants
concede that the first element is satisfied.  The conduct for which Vincent was
allegedly retaliated against — filing grievances — is protected under the First
Amendment.  *See* Memorandum of Law in Support of Defendants' Motion for
Summary Judgment ("Def. Mem.") at 7 ("Defendants do not dispute that the First
Amendment protects an inmate's decision to file a grievance or a lawsuit, but
plaintiff fails to prove the remaining elements of his claim.").

described in Vincent's complaint, is insufficiently serious to "constitute an adverse action" as a matter of law.[34]  *Second*, they point to the fact that Vincent's lawsuits were filed years before the alleged retaliation, and they addressed incidents that happened elsewhere.  Accordingly, defendants argue that Vincent has not shown the necessary "indicia of a causal connection" between his protected expression (the filing of lawsuits) and the allegedly retaliatory act.

Both of these arguments fail.  With respect to the first, defendants rely heavily on *Boddie v. Schneider*,[35] a Second Circuit case holding that plaintiff's allegation of being verbally harassed and sexually touched without consent "did not involve a harm of federal constitutional proportions as defined by the Supreme Court."[36]  Likewise here, argue defendants — because Vincent has failed to allege anything more severe than what occurred in *Boddie*, there is no "adverse action" to support his retaliation claim.

What the Government fails to mention is that *Boddie* concerned an Eighth Amendment claim, which — for good reason — carries a more stringent burden than First Amendment retaliation.  For an officer to be liable under the

---

[34]   *Id.* at 9.

[35]   105 F.3d 857 (2d Cir. 1997).

[36]   *Id.* at 861.  *Accord Farmer*, 511 U.S. at 833-34.

Eighth Amendment, not only must he have a "culpable" mental state; he must subject an inmate to an "unnecessary and wanton infliction of pain."[37]  By holding that verbal harassment and non-consensual sexual touching did not rise to *that* level, the Second Circuit had no occasion to address whether it constituted an "adverse action" for First Amendment purposes.

If anything, the reasoning in *Boddie* cuts against defendants' position. In the same breath that it dismissed Boddie's claim, the Second Circuit also called the alleged groping "despicable," and took care to emphasize that even if "the episodes of harassment and touching alleged by Boddie" did not support an Eighth Amendment claim, they could nevertheless support *other* causes of action — including "state tort actions."[38]  Here, the question is whether Vincent's allegations, which are strikingly similar to the "episodes" in *Boddie*, suffice to sustain a retaliation claim.  Is sexual groping by an officer who is simultaneously issuing verbal threats the kind of action that would deter a person of "ordinary firmness" from exercising his or her constitutional rights?  This is plainly a question of fact.  Defendants can certainly raise their "person of ordinary firmness"

---

[37]     *Boddie*, 105 F.3d at 861.  *Accord Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

[38]     *Boddie*, 105 F.3d at 861.

argument at trial — and if the argument succeeds, Vincent's retaliation claim will fail.  But it would be inappropriate for the Court to resolve the issue at this stage.

Defendants' second argument fares no better.  "Even assuming *arguendo* that the alleged groping constitutes an adverse action," defendants argue that Vincent has failed to "proffer any facts to support the requisite causal connection between the alleged groping and a previously filed lawsuit."  For support, defendants point to the fact that Vincent's previous lawsuits — the lawsuits for which C.O. Sitnewski was supposedly retaliating — concerned incidents that occurred at different correctional facilities, and that C.O. Sitnewski was not a named defendant in any of them.

This argument is puzzling.  Although defendants are certainly correct that "[a]s a general matter, it is difficult to establish . . . retaliation [by one officer] for complaints against another [officer],"[39] generalities do not resolve particular cases.  According to Vincent, C.O. Sitnewski, in the midst of groping his genitals,

---

[39]     *Hare v. Hayden*, No. 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr.  14, 2011).  *Accord Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a retaliation claim whose only causal basis was a letter that plaintiff wrote many weeks before the allegedly retaliatory acts, implicating officers *other than* named defendants).  *See also* Def. Mem. at 11 ("[A] claim that one defendant took action against the plaintiff in retaliation for a complaint made against a different [officer] [should be] viewed with particular skepticism.").

said, "Isn't one of your lawsuits about this, can't nobody see if I fuck you in the ass." This might not be true, of course. But if it *is* true, a trier of fact could certainly infer that C.O. Sitnewski was motivated by a retaliatory purpose — *i.e.*, that the groping was meant to penalize Vincent for bringing past grievances, and to dissuade future grievances. The claim cannot be dismissed as a matter of law.

### 2.    Claim Four

Claim Four is amenable to essentially the same analysis as Claim One. Vincent alleges that C.O. Depo and Lt. Schmidt intruded on his shower, removing the shower curtain and his clothes, leaving Vincent naked in the shower room for approximately an hour. Furthermore, Lt. Schmidt allegedly told Vincent that he wanted to see "what kind of man" Vincent was "without his pen" — a thinly-veiled reference, Vincent argues, to his previous complaints.

As with Claim One, defendants' strategy here is to argue that Vincent's allegations, even if true, fail to satisfy the elements of retaliation. *First*, the Government argues that whatever psychological harm Vincent suffered as a result of the shower incident, it was only *de minimus* — and therefore insufficient to ground a First Amendment claim.[40] Once again, however, defendants have confused the injury required in the retaliation context — adverse action — with the

---

[40]    Def. Mem. at 17.

more exacting standard of harm required under the Eighth Amendment.[41]
Vincent's allegations do not rise to the level of the latter.  But do they describe
action that would make a person of "ordinary firmness" disinclined to exercise his
rights?  Defendants find this proposition "[im]plausibl[e]."[42]  Vincent clearly
thinks otherwise.  Which side is right is a question of fact.

       *Second*, defendants dispute Vincent's theory of causation.  Citing to
the same case law invoked as to Claim One,[43] defendants argue that "[t]here is
nothing in the record to indicate which grievance or grievances" Lt. Schmidt was
referring to when he made reference to Vincent's "pen," or whether he was
"talking about [Vincent's] grievances at all, if in fact [Lt. Schmidt] said what he is
alleged to have said."[44]  But both questions — whether Lt. Schmidt made the
remark about the pen, and, assuming he did, what the remark meant — are issues
of fact.  Defendants are correct that "nothing in the record" supports Vincent's
allegation.  But given the nature of that allegation, what evidence (apart from
Vincent's own testimony) plausibly *could* support it?  Greenhaven likely does not

---

[41]    *See id.* (citing exclusively to Eighth Amendment cases).

[42]    *Id.*

[43]    *See Wright*, 554 F.3d at 274.

[44]    Def. Mem. at 18.

keep records about the humiliation tactics employed by officers against inmates,

and Vincent had no opportunity to perform an investigation to secure physical

evidence.  Ultimately, the viability of Vincent's claim comes down to the

credibility of his account.  That is for the jury to decide.

### 3.    Claim Five

The same basic analysis applies to Claim Five.  Vincent alleges that

C.O. Relf entered his cell and warned Vincent that if he filed any more grievances,

or if Relf caught him doing "any of that Muslim stuff around here," Relf was going

to "jump" him.  Defendants do not argue — nor could they argue — that Relf's

threat was not causally connected to Vincent's past grievances.  Relf drew the

connection explicitly.  Instead, defendants focus on the severity of the retaliatory

conduct.  According to defendants, Vincent's "allegation that C.O. Relf threatened

to jump him, without anything more, does not constitute [] an adverse action,"

because under Second Circuit law, "[i]t is well-established that insulting or

disrespectful comments directed at an inmate generally do not rise to the level of

conduct that would deter [the exercise of] constitutional rights."[45]

---

[45]    Def. Mem. at 19.

Defendants are right on the law, but they misrepresent the facts of this case.  The Second Circuit has explained that "insulting or disrespectful comments directed at an inmate,"[46] as well as "verbal responses of resentment or even ridicule [in response to inmate complaints],"[47] do not give rise to retaliation claims.  Here, however, Vincent does not allege that C.O. Relf insulted or ridiculed him — he alleges that Relf threatened him with physical harm.  As to *that* kind of comment, the Second Circuit has not definitively spoken, and courts in this District are split.[48]  In the absence of further guidance, I decline to grant summary judgment on Claim Five.  A reasonable juror could find that the prospect of being "jumped" by an

---

[46]    *Davis*, 320 F.3d at 353.

[47]    *Dawes*, 239 F.3d at 493.

[48]    *Compare Hofelich v. Ercole*, No. 06 Civ. 1369, 2010 WL 1459740, at *2 (S.D.N.Y. Apr. 10, 2010) (holding that "verbal threats," if they are "specific[]," can "constitute adverse action" for retaliation purposes), *with Rembert v. Cheverko*, No. 12 Civ. 9196, 2014 WL 3384629, at *9 (S.D.N.Y. July 10, 2014) (allegation that officers "intimidated [plaintiff]" after he filed a grievance was "insufficient to allege adverse action").  *See also Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (collecting cases in both directions).

officer, even if no physical altercation actually occurred,[49] would deter an inmate

of "ordinary firmness" from asserting his or her constitutional rights.

### 4.    Claim Three

Finally, Vincent alleges that C.O. Stetson and C.O. Carter handcuffed

him to a bedpost for eighteen hours, as payback, they explained, for his grievances.

Here, defendants change their tack.  Although they make a faint-hearted attempt to

suggest that being handcuffed to a bedpost does not qualify as an adverse action,[50]

---

[49]    Defendants emphasize that "[Relf's] threats never amounted to anything" to bolster the view that those threats did not rise to the level of adverse action.  Def. Mem. at 20.  Some judges in this District have agreed with this reasoning.  *See, e.g.*, *Fischer*, 682 F. Supp. 2d at 434 (citing the fact that defendant "never followed through on [his] threats" as support for dismissal).  But it is difficult to see why the *materialization* of a threat (or not) bears on its chilling effect.  The latter turns on whether a threat is *perceived* as serious, not on whether it actually turns out to be serious.

[50]    The main support for this argument — which the Government wisely does not press — comes from cases about tightly-applied handcuffs.  *See* Def. Mem. at 16 (collecting cases). Putting aside that these cases uniformly involve Eighth Amendment challenges, *not* retaliation claims, the bigger problem is that apart from involving handcuffs, they have nothing to do with Vincent's allegations.  Even "extremely tight" handcuffing is not the same as — is not even in the same *vicinity* as — the serious liberty deprivation alleged here.  *See Bender v. City of New York*, No. 09 Civ. 3286, 2011 WL 4344203 (S.D.N.Y. Sept. 14, 2011).  In Vincent's words, "[t]his is not a case of excessively tight handcuffs. . . . [It] is a case of [an inmate] being handcuffed for seventeen hours to his bed."  Opp. Mem. at 22.

and to dispute Vincent's theory of causation,[51] these arguments are only briefly presented.  Instead, defendants spend considerable time and energy arguing that Vincent's allegation "strains credulity,"[52] and should be dismissed as "'wholly incredible.'"[53]  For support, defendants point to the fact that *other* officers — such as C.O. Coccitti, who was assigned to patrol Vincent's cell block the night of the alleged incident — did not "not[e]" any "unusual activity" during their rounds.[54]

That no officer has come forward to inculpate C.O. Stetson and C.O. Carter is hardly a surprise.  Even if other Greenhaven officers *had* witnessed something out of the ordinary, the likelihood of their saying so is slight — "[t]he notion of a corrections officer trying to protect [his or her] own is hardly

---

[51]    *See* Def. Mem. at 15 (describing Vincent's view of causation as mere "guess work").  As with Claims One and Four, however, the trouble with the Government's position is that Vincent has clearly alleged that C.O. Stetson and C.O. Carter made verbal reference to his grievances.  To deem this allegation "guess work" — and grant summary judgment on that basis — would, in practice, be nothing more than a determination of Vincent's credibility.  At this stage, that is precisely what this Court is supposed to avoid.  *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003) ("It is axiomatic that courts should not assess credibility on summary judgment.").

[52]    Def. Mem. at 11.

[53]    *Id.* at 12 (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). *Accord Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding that "frivolous" actions should be dismissed so as to "preserve scarce judicial resources").

[54]    Def. Mem. at 13.

fantastical."[55]   Furthermore, the cases cited by defendants deal with *contradictory*

allegations, not allegations that seem unlikely as a matter of fact.  For example, in

*Jeffreys v. Rossi*[56] — a case presided over by this Court, and ultimately affirmed by

the Second Circuit[57] — plaintiff's theory of the case required him to deviate from,

and at times blatantly contradict, the story that he originally relayed to law

enforcement.  After admitting numerous times (to multiple officials) that he had

jumped out of a third-story window, and that his injuries stemmed from the

resulting fall, plaintiff changed his version of events nine months later, weaving an

intricate tale of excessive force, which included, *inter alia*, forcible defenestration

by the police.[58]  This revisionist account of events was "so replete with

inconsistencies," and so plainly grated against the rest of the record, that "[no]

reasonable jury could [have found] that excessive force was used against

[plaintiff]."[59]

---

[55]    *Barrington v. New York*, 806 F. Supp. 2d 730, 750 (S.D.N.Y. 2011).

[56]    275 F. Supp. 2d 463 (S.D.N.Y. 2003).

[57]    *See Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

[58]    *See Jeffreys*, 275 F. Supp. 2d at 475-78.

[59]    *Id.* at 475.

Here, by contrast, Vincent has not contradicted himself, or otherwise given the Court reason to doubt the coherence of his allegations. Defendants have made clear that they find those allegations improbable. But improbability is not the same as inconsistency. Where the latter concerns the relationship *between* allegations (or different versions of the same allegation), the former ultimately requires a determination of credibility — and "it is axiomatic," of course, "that courts should not assess credibility on summary judgment."[60] As the Supreme Court has explained, claims should only be dismissed as "factually frivolous" at the summary judgment stage if they are "fanciful," "fantastic," or "delusional," *not* because "the court finds [a] plaintiff's allegations unlikely."[61]

The allegations here are quite serious. If Vincent's version of events is true, two officers used their position of power to threaten and dehumanize an inmate they were supposed to protect. According to defendants, Vincent's story is "incredible, if not absurd."[62] But that is not a judgment I can make — particularly

---

[60]     *Id.* at 476. In affirming the result in *Jeffreys*, the Second Circuit was careful to emphasize that its holding was limited to "the rare circumstances where [a] plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," making it necessary for the district court to "assess[] [] the plaintiff's account" at the summary judgment stage. *Jeffreys*, 426 F.3d at 554.

[61]     *Denton*, 504 U.S. at 32-33.

[62]     Def. Mem. at 12.

given the state of correctional facilities right here in New York.  Just this month,

the City agreed to a far-reaching settlement with inmates from Rikers Island, after

the U.S. Attorney's Office of Manhattan "issued a blistering report that found

rampant use of unnecessary and excessive force by correction officers against

adolescent inmates and the widespread violation of their civil rights."[63]  What if

one these inmates had filed a 1983 claim and — as here — offered no evidence

beyond his own version of events?  Presumably — as here — defendants would

have waved off the allegation as "frivolous."  But that just underscores why

credibility determinations are best left to finders of fact.  What seems "fanciful" or

"delusional" to one person may seem perfectly reasonable to another.  Vincent

should have an opportunity to relay his story to a jury.

## C.    Qualified Immunity

Finally, the officers are not entitled to qualified immunity on any of

the three surviving claims.  Defendants argue that their conduct, regardless of its

---

[63]      "New York City Settles Suit Over Abuses at Rikers Island," N.Y.
TIMES (June 22, 2015).  Nor is this the only example of inmate abuse in the New
York state prison system that has come light in recent months.  *See, e.g.*, "Three
Attica Guards Resign in Deal to Avoid Jail," N.Y. TIMES (Mar. 2, 2015)
(documenting the resignation of three former corrections officers who, while at
Attica, beat an inmate until he was "drenched in blood").

constitutionality, "[did] not violate [a] *clearly established* . . . right[]."[64]  But if Vincent succeeds in demonstrating that retaliation occurred, the right imperiled by officers at Greenhaven — the right to speak out without fear of reprimand — was well-ingrained at the time of the disputed conduct.  Retaliation claims have long been a fixture of First Amendment law.  Only a "plainly incompetent" officer — or one who was intentionally violating the Constitution — would think it permissible to single out an inmate for adverse action because he spoke out against something that happened (to him or someone else) in the prison.[65]

Defendants' secondary argument also fails.  Even assuming that the law grounding Vincent's claims "could be deemed to have been clearly established," defendants nevertheless contend that "it was reasonable for an official in [their] position to have believed that no such law existed."[66]  Whether or not that is true, it is irrelevant.  Qualified immunity does not permit an "ignorance of the law" defense.  For good reason — allowing officials to escape liability because they do not know what the law requires of them would set exactly the wrong

---

[64]     Def. Mem. at 24 (emphasis added).

[65]     *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2085 (2011) ("[Qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.") (internal citations omitted).

[66]     Def. Mem. at 24.

incentives. And it would undermine the key virtue of qualified immunity doctrine — that if nothing else, the "clearly established" test is objective. The defendants in this case either violated Vincent's well-established rights, or they did not. Either way, qualified immunity affords them no shield.

## VI.   CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is GRANTED in part and DENIED in part. The Clerk of the Court is directed to close this motion (Dkt. No. 73). Furthermore, because this case is proceeding to trial, and because Vincent's claims satisfy the standard set forth in *Hodge v. Police Officers*,[67] the Clerk of the Court is also directed to find pro bono counsel to represent Vincent. A status conference is set for July 21, 2015 at 4:30 PM.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 25, 2015

_____

[67]      *See* 802 F.2d 58, 61-62 (2d Cir. 1986).

-27-

**- Appearances -**

**Plaintiff (Pro Se):**

Damon Vincent
02-A-2314
Fishkill Correctional Facility
Box 1245
Beacon, NY 12508

**For Defendants:**

Julia Lee
Assistant Attorney General
New York State Department of Law
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-6200